# Lease Purchase Contract

**Lessor:**
Name: **Chowder, Inc.**
Address: 8920 Eves Rd. #769479
City State Zip: Roswell, GA 30076
Email: Info@Chowderfinancial.com
Phone: (833) 550-0505

**Contractor:**
Name:
Address:
City State Zip:
Phone:

**Lessee:**
Rental Number:
Name:
Address:
City State Zip:
Email:
Phone:

**Co-Lessee:**
Name:
Address:
City State Zip:
Email:
Phone:

**Date:**

In this Agreement, "we," "us," and "our" mean Chowder, Inc., as the Lessor. "You" and "your" mean the person(s) signingthis Agreement as the Lessee/Rental Customer and the Co-Lessee. Both "Lessee" and "Co-Lessee" are sometimes referred to as "Lessee." "Agreement" means this Lease-Purchase Agreement. "Property" means the rental property described below.

## 1.  DESCRIPTION OF PROPERTY
**The Property leased under this Agreement includes the following:**

| Description | Condition |
|---|---|
|  |  |
|  |  |
|  |  |

**Total Cash Price: $_____ (including tax and contractor fees)**

In addition to the above information, a more detailed Description of the Property, including Serial Number, Brand, Model and, if multiple items, a list of those items, will be provided to you when you have received delivery of the Property. We acknowledge that this Agreement shall not be effective until you have received delivery of the Property and installation of the Property has been confirmed.

2.  **TOTAL INITIAL PAYMENT. Your Initial Payment of $_____ will consist of an application fee of $0.00 and a payment of $_____, both of which must be paid by a credit card or, at your option, by a debit card ("Card"). You must also make your first lease payment on the due date. Your minimum Initial Term under this Agreement is one _____ period following the date. After that, you have three options: (1) you can continue using the Property by making a lease renewal payment in advance; (2) you can buy the Property (see item 8 below); or (3) you can return the Property to us with no further obligation, except for any past due payments due.**

3.  **LEASE TERM AND PAYMENT SCHEDULE. Your payment is $_____including tax for every period and is due in advance of each period that you choose to renew this Agreement. This Agreement begins when the Completion Certificate is signed by you and expires after the initial period. At your option, you can renew this Agreement for additional periods by making a lease renewal payment in advance of each term.**

4.  **OTHER CHARGES**
    a.  **Application Fee: $_____ (for processing your lease purchase application)**
    b.  **Late Fee: If a lease payment is not made within 7 days after the renewal date, a late fee of $_____ will be charged for each missed payment prior to reinstatement.**
    c.  **Return Item Fee: $_____ (for each returned check, ACH draft, or other payment item).**
    d.  **In-Home Collection Fee: $_____ (for each time we must come to you to collect the payment).**
    e.  **Reinstatement Fee: $_____ (for each reinstatement).**

    f. **Re-Delivery Fee: $_____ (for each time we must re-deliver Property upon reinstatement) – You agree to pay the above fees for each occurrence, except that the Return Item Fee is applicable only if you fail to make the required payment within 10 days after we send written notice to you.**

    g. **Reinstallation Fee (for each time we must re-deliver Property upon reinstatement) – You agree that all costs related to the reinstallation of the Property are your responsibility and you will provide us with the completion certificate when Property is reinstalled.**

    h. **Change of ACH Information Fee: $_____ (if you change your bank account or ACH payment information during the Agreement, you must pay us this fee)**

    i. **Alternate Payment Convenience Fee: $_____ (for each payment, other than the Application Fee, we are required to process using a Card)**

5. **COST OF LEASE.** If you make the Initial Payment of $_____ and _____ payments of $_____ each, you will have paid a total of $_____ (including tax) and you will then own the Property. The Cost of Lease includes the Initial Payment but DOES NOT include other additional charges, fees, or costs described in this Agreement except for the Application Fee.

6. **ESTIMATED FAIR MARKET VALUE OF LEASED PROPERTY (Cash Price). $_____ (including tax).**

7. **COST OF LEASE SERVICES. $_____.** This is the difference between the Cost of Lease and the Estimated Value of the Leased Property.

8. **EARLY PURCHASE OPTION (EPO/Processing Fee). You do not own the Property. You are not obligated to renew this Agreement beyond the Initial Term. If you choose, you can buy the Property at any time. EARLY PAYMENT OPTION: You have the right to purchase the Property at any time during the first _____ days from the date of the Contract for the Cash Price of $_____, less lease payments (not including taxes and fees) made up to the date you exercise the EPO, plus a processing fee equal to the Cash Price multiplied by the EPO fee of _____% plus applicable taxes. If you make only your scheduled payments each payment period, you will be required to make an additional payment at the date you exercise your EPO. You may elect to make additional periodic payments throughout the EPO period to reduce this additional payment. Please refer to the attached EXHIBIT F for the payment required to exercise your EPO on the _____ day. After _____ days, your EPO price is _____% of the remaining lease payments. Please refer to the attached EXHIBIT F for the payment required to exercise your EPO on the _____ day. The EPO price does not include other charges such as late fees which must be paid in full before ownership transfers to you. You do not obtain any ownership rights until you have paid for the Property in full or through fully exercising an EPO.**

9. **YOUR RISK OF LOSS. You are liable for the loss of or damage to the Property from all causes beyond normal wear and tear. Your liability is the Fair Market Value of the Property or our reasonable costs of repair on the date of loss or damage, whichever is less.**

10. **REINSTATEMENT. If you fail to make a timely lease renewal payment, this Agreement expires. You can reinstate it without losing any rights or options previously acquired by making all payments or returning the Property to us within 100 days after renewal date. If you return the Property to us within that time, then you will have 180 days from the date of return to reinstate by making all payments due. If you reinstate, we will provide you the same Property or Property of comparable quality and condition If you reinstate, you must pay a $5 reinstatement fee plus a re-delivery fee, if incurred, plus your next lease payment and any other amounts you owe.**

11. **MAINTENANCE AND WARRANTY.** You are responsible for maintaining the Property in good working condition during the lease term. We will not be responsible for the costs or the results of any repairs or damage caused by improper use. You must notify us immediately if the Property breaks and send us written records of any repairs. We will assist you if any maintenance or service required on the Property is covered by a manufacturer's warranty. If anypart of a Manufacturer's express warranty covers the Property at the time you acquire ownership of the Property, it will be transferred to you if allowed by the terms of the warranty attached hereto as Exhibit A. If you obtain ownership,we will transfer any unexpired manufacturer's warranty to you if permitted to do so.

12. **TERMINATION. You may terminate this Agreement at any time without penalty by returning the Property or making it available to us. We may terminate this Agreement if you breach any of its terms. Upon termination, you remain liable for all lease payments and other amounts due until you return the Property. The rights and remedies available under this Agreement survive termination.**

13. **CONDITION OF THE PROPERTY.** You and we agree that you have the right to examine the Property and know its condition. We are not a manufacturer of the Property or a dealer in similar Property and have not made and do not make any representation, warranty, or covenant, express or implied with respect to the condition, quality, durability, suitability, or merchantability of the rental Property. We make no (and there shall be no) implied warranty of merchantability and no implied warranty of fitness for a particular purpose. We will, however, take reasonable steps within our power to make available to you any manufacturer's or similar warranty applicable to the Property. If, at the time you acquire ownership of the rental Property, any part of the manufacturer's warranty covering the Property exists, such warranty will be transferred to you if allowed by the terms of the warranty attached hereto as "Exhibit A".We will

not be liable to you for any liability, loss, or damage caused or alleged to be caused directly or indirectly by the Property or by any inadequacy or defect in such Property. You acknowledge and agree that your recourse relatedto any claim involving the Property is to the manufacturer or contractor of the rental Property, you assume all risk associated with the Property, you understand and agree that the sole obligation of the lessor to you related to this agreement and the Property provided hereunder is limited to leasing such Property to you on the terms contained inthis agreement.

14. **OTHER JURISDICTIONS.** Some jurisdictions do not allow the exclusion of implied warranties or the exclusion or limitation of incidental or consequential damages and accordingly, the limitations or exclusions contained in this agreement may not apply to you. This agreement gives you specific legal rights, and you may also have other rights which vary from jurisdiction to jurisdiction. The disclaimers, exclusions, limitation of liability, and limitations on your rights to recourse under this agreement will not apply to the extent prohibited by applicable law.

15. **LOCATION OF PROPERTY.** The Property shall be kept at the address shown for you in this Agreement. It may not be moved from such address without our written consent, which consent shall not be unreasonably withheld. The Property may only be moved by a transport authorized in writing by us at your expense.

16. **TITLE, MAINTENANCE AND TAXES.** We retain title to the Property at all times and will pay any taxes that might be levied on the Property. You do not own the property unless you buy it or acquire ownership as provided by the terms of this Lease. You must maintain the Property in good working order and condition in accordance with the manufacturer's specifications and recommendations as long as you rent it. This includes, at a minimum, an annual inspection of the Property by a licensed professional and any other action required on a periodic basis to maintain the Property in good working condition. You cannot permit the Property to be altered in any way and you cannot permit the Property to be permanently affixed to any real estate in such a matter that it cannot be removed without damage. You cannot obstruct access to the Property so as to prevent removal in the event of termination.

17. **RIGHT OF INSPECTION.** We have the right to examine and inspect the Property at all reasonable times. You consent to our right to electronically control or disable the Property without notice in the event of default under this Agreement. We have the right to remove the Property without notice in the event of default under this Agreement, or the end of any lease period if payment is not made for an additional lease period.

18. **RIGHT TO TAKE POSSESSION.** We have the right to take possession of the Property because of the breach by you of any of the terms of this Agreement. In such event, you agree to pay our cost incurred in taking possession of the Property, including reasonable attorney's fees. Except for a Lessee who resides in the State of Kansas, this Agreement constitutes written permission for us and our agents, contractors and others at our direction to enter real property owned or leased by you, open gates, move obstacles, ortake any reasonable means necessary to recover the Property in the event of your default; provided, however, this Agreement does not authorize us to unlawfully enter your premises or commit a breach of the peace while repossessing the Property. By signing this Agreement, you authorize any person having an interest in the real property upon which the Property is located, including but not limited to landlords, owners and/ or Co-Lessees, the right to enter said real property for the purpose of assisting us in repossessing the Property. In addition, we reserve the rightto electronically disable the Property prior to removal, such that the Property will be rendered inoperable. YOU ACKNOWLEDGE AND UNDERSTAND THAT IN THE EVENT OF TERMINATION THE REMOVAL AND RECOVERY OF THE PROPERTY WILL BE ACCOMPLISHED BY REASONABLE MEANS THAT MAY INCLUDE, WITHOUT LIMITATION, DISCONNECTION FROM THE POWER CELLS, DISCONNECTION FROM PIPING SERVING THE DWELLING, AND DISCONNECTIO FROM VENTILATION AND DUCT WORK SERVICING THE DWELLING. WEARE IN NO EVENT RESPONSIBLE FOR ANY UNNECCESARY DAMAGE TO THE DWELLING OCCASIONED BYTHE REMOVAL PROCESS, NOR ARE WE RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES RESULTINGFROM REMOVAL OF THE PROPERTY. IF WE REMOVE THE PROPERTY, WE WILL ENDEAVOR TO UTILIZE THE MOST REASONABLE MEANS POSSIBLE AND WILL MAKE EVERY REASONABLE ATTEMPT TO MINIMIZE ANY POTENTIAL DAMAGE. YOU ACKNOWLEDGE THAT IN THE EVENT CHOWDER TAKES POSSESSION OF THE PROPERTY BECAUSE OF YOUR BREACH, CHOWDER SHALL HAVE NO RESPONSIBILITY TO REPLACE THE REPOSSESSED PROPERTY WITH THE UNIT THAT HAD PREVIOUSLY EXISTED PRIOR TO THE INSTALLATION OF THE PROPERTY BY CHOWDER.

19. **GENERAL**

    A. You may not sell, assign, mortgage, pawn, pledge, encumber, or otherwise dispose of the Property or your rights under this Agreement. We may sell, transfer, pledge, or assign this Agreement without notice to you. You also may not remove the Property from the location in which it is installed, which is the same as the address in this Agreement, without our prior written consent.

    B. You agree we may contact you by email, telephone, cell phone or text message at any number you have given to us. Communication may be in the form of pre-recorded messages using our automated dialing system. We are not responsible for any charges from the company that provides you with telecommunications, wireless or internet services.

    C. We may share your name, contact information and information about this Lease with our affiliates and with nonaffiliated companies. You have the right to prevent this sharing by calling us at (833) 550-0505.

    D. You understand that authorizing electronic debits in the form of an ACH, or by use of your debit card, to your



account is not required as a condition to entering into this Agreement.

E.  You agree that we may make the Agreement and related documents available to you in electronic form. You have the right to have the Agreement and related documents also made available to you on paper or in a non-electronic form. You have the right to withdraw this consent or request a paper copy or non-electronic record of this Agreement or related documents by writing to us at the above address or by calling (833) 550-0505. No fee will be charged for the paper or non- electronic copy of this Agreement or related documents.

F.  You agree to use the Property for personal, family, or household purposes only.

20. **EXCESS PAYMENTS.** At any time, you may pay an amount over the lease payments specified above. We will hold any additional payments and apply them in any order we elect to amounts you owe. Excess payments held by us will not bear interest. Excess payments will be refunded at the end of this Agreement.

21. **AUTHORIZATION TO REQUEST INFORMATION.** You authorize us to request information from your employer, landlord, financial institution, and any other party listed on your application to us for this Agreement, and you hereby authorize all such parties to release such requested information to us. In addition, you agree that we may obtain a consumer report and report late or missed payments in connection with this Lease. If you believe any information is inaccurate, you may write to us at our above address.

22. **CREDIT REPORTING.** You authorize us to make inquiries concerning your credit history and standing. We may report information about your Agreement to credit reporting agencies. Late payments, missed payments or other defaults on your lease may be reflected in your credit report. If you believe that any information about your lease that we furnish to a consumer reporting agency is inaccurate, write to us at the address appearing on the first page of this lease under "Lessor." Your letter should provide the following information; (1) your name, mailing address and phone number, (2) identification of the specific information being disputed, (3) explanation of the basis for the dispute and (4) any supporting documentation related to the dispute.

23. **PERSONAL PROPERTY.** You and we agree to the following (1) The property leased is, and at all times shall remain, personal property, notwithstanding that the property or any part of it may now be, or in the future may become, in any manner attached to, embedded in, or permanently resting on real property or any building on real property, or attached in any manner to what is permanent as by means of cement, plastic, nails, bolts or screws. (2) This Lease (including any and all Schedules and Exhibits) constitutes a "true lease" and a "finance lease" as defined in the Uniform Commercial Code in this State, (3) This Lease is not a sale or retention of a security interest, (4) Title to the Property shall remain in Lessor and Lessee shall acquire no ownership, property, rights, equity or interest other thanas provided in this Lease Purchase Contract and (5) You agree that we may file a financing statement under the Uniform Commercial Code covering the leased Property.

24. **APPLICABLE LAW.** This Agreement shall be construed in accordance with and governed by the laws of the State of the Lessee's Residence, without regard to its conflict of laws, and applicable Federal law.

25. **ARBITRATION.** Most concerns can be resolved quickly and to your satisfaction by calling our Customer Support Department at (833) 550-0505. If our Customer Support Department is unable to resolve a complaint you may have to your satisfaction (or if we have not been able to resolve a dispute we have with you after attempting to do so informally), you and we each agree to resolve those disputes through binding arbitration or small claims court instead of in court. Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages that a court can award. Also, in arbitration, you can recover attorneys' fees from us to the same extent as in court. Any arbitration under this Agreement will take place on an individual basis; class arbitrations are not permitted. References in this arbitration provision to "we,"" and ""us"" include our subsidiaries, affiliates, directors, officers, employees, agents, attorneys, predecessors in interest, successors, and assigns.

You and we agree, upon written demand made by the other, to submit to binding arbitration all disputes, controversies, and claims, whether pre-existing, present, or future (whether before or after termination of this Agreement), that ariseout of or relate to (a) this Agreement, use of the Property, or any advertisements, promotions, or oral or written statements related to this Agreement, (b) the relationships that result from this Agreement (including, to the fullest extent permitted by law, relationships with third parties who are not parties to this Agreement or this arbitration provision), or (c) the validity, interpretation, scope or enforceability of this Agreement (collectively, a "Claim"); provided, however, that issues relating to the scope and enforceability of this arbitration provision are for the court todecide. All parties retain the right to sue in a small claims court for claims within the jurisdictional limits of the small claims court. The arbitration will be conducted by the American Arbitration Association ("AAA") in accordance with theAAA Commercial Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes ("Rules"). If thereis any inconsistency between this Agreement and the Rules, the Agreement will control). Nothing in this arbitration agreement is intended to prevent either of us from filing a lawsuit in an appropriate small claims court for an amountthat does not exceed the court's jurisdictional limits. If counterclaims or other motions would cause the lawsuit to be removed from small claims court to another court, the dispute must be resolved by arbitration.

If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of



documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the Rules. Any arbitration hearing shall be conducted in the federal judicial district where you live, unless we both agree to another place. Regardless of how the arbitration is conducted, the arbitrator must issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based. Judgment upon any award rendered in arbitration may be entered in any court having jurisdiction.

The arbitrator may consider any claim or defense, and award any remedy or relief, that a state or federal court could order. This arbitration provision is made pursuant to a transaction involving interstate commerce, and the Federal Arbitration Act (the "FAA") shall apply to the construction, interpretation, and enforceability of this Agreement. You should contact the AAA at 800-778-7879 or www.adr.org for more information about arbitration.

The demand for arbitration may be made before or after commencement of any litigation. Demand for arbitration must be made before the date when any judicial action upon the same Claim would be barred under any applicable statute of limitations; otherwise, the Claim also is barred in arbitration. Any dispute about whether any statute of limitations, estoppel, waiver, laches, or similar other doctrine bars the arbitration of any Claim shall be decided by the arbitrator.

YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

You cannot join together in a dispute with anyone other than persons who signed this Agreement with you. Even if other people have disputes similar to a dispute that you and we have, those people and their disputes cannot be partof any arbitration between you and us. A Claim by, or on behalf of, other persons will not be considered in, joined with, or consolidated with, the arbitration proceedings between you and us, and a Claim may not be arbitrated on a class action, private attorney general, or other representative basis.

Upon written request by you, for claims up to $50,000, we will pay to the AAA the portion of the arbitration filing fee that exceeds the cost of filing a lawsuit in the federal court where you live. Upon written request by you, we may elect,at our sole discretion, to pay or advance some or all of any remaining arbitration fees and other costs. The arbitratorwill decide whether we or you ultimately will be responsible for paying any filing, administrative or other fees in connection with the arbitration. If you are the prevailing party in the arbitration, the arbitrator(s) also may order us to pay some or all of your attorney, expert, and/or witness fees. This arbitration provision does not preclude the arbitratorfrom awarding you attorneys' fees and expenses pursuant to any right to those amounts you may have under applicable law. Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail in arbitration, we agree that we will not seek such an award.

Nothing in this arbitration provision shall limit your or our right, whether before, during, or after the pendency of any arbitration proceeding, to exercise any self-help remedies, such as  set-off or  to obtain provisional or  ancillary remedies or injunctive or other traditionally equitable relief. You and we agree that the taking of these actions or any other participation in litigation by you or us does not waive any right that either you or we have to demand arbitration at any time with respect to any subsequent or amended Claim filed against you or us after commencement of litigation between you and us.

Your Right to Opt-Out: If you decide that you do not want to arbitrate any dispute(s) with us, you must notify us in writing at our address in the Agreement no later than 10 days after the date you sign the Agreement. Your decision to opt out of this arbitration agreement will not affect your Agreement with us.

This arbitration provision shall survive termination of this Agreement.

26. **WAIVER OF JURY TRIAL.** You and we agree that, by agreeing to arbitration, you and we are each waiving the right to a trial by jury.

27. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between you and us and may only be modified or changed by a written agreement signed by both of us.

The Lessee and Co-Lessee (if applicable) must initial each of the following provisions.

_____        _____        You should not sign the delivery documents or a Completion Certificate until you have received all of the Property in good condition.

_____        _____        I am not leasing or financing any other merchandise from this Contractor at this time.

_JE_     _____     The Early Purchase Option starts on the day you sign the Agreement.

_JE_     _____     If the first scheduled ACH date is prior to the delivery of the Property, you authorizeus to draft your account on the next scheduled pay date.

**NOTICE TO THE LESSEE- READ BEFORE SIGNING**
**(1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ THE ENTIRE AGREEMENT INCLUDING ANY WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED,**
**(2) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.**
**(3) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(4) IF YOU ELECT TO MAKE WEEKLY RATHER THAN MONTHLY PAYMENTS AND EXERCISE YOUR PURCHASE OPTION, YOU MAY PAY MORE FOR THE LEASED PROPERTY.**

**LESSEE'S RIGHT TO CANCEL**
This is a home solicitation sale, and if you do not want the Property, you may cancel this Agreement by providing written notice to the Lessor, in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services. It must be delivered or postmarked before midnight of the third business day after you sign this Agreement. If you cancel this Agreement, the Lessor may not keep all or any part of any cash down payment. See the Notice of Cancellation form attached hereto as Exhibit B for an explanation of this right. A duplicate Notice of Cancellation form is attached hereto as "Exhibit C".

LESSEE(S)

_Johnny Ellerby_

CO-LESSEE

_____

LESSOR
Chowder, Inc

_Daniel Collier_

_____
Chief Executive Officer

_JE_

# ACH and Card Authorization Form

**Lessor:**                                                            **Date:**

Name: Chowder, Inc.                                         **Agreement:**

Address: 8920 Eves Rd.

#769479 City State Zip:

Roswell, GA 30076 Email:

Info@Chowderfinancial.com

Phone: (833) 550-0505

**Lessee Information:**                                    **Financial Institution:**

Lessee Name:                                                  Name on Account:

Address:                                                          Routing Number:

City State Zip:                                                 Account Number:

Phone:                                                            Name of Institution:

SSN:                                                              Type of Account:

DLN:

DLN State:

**YOU ARE NOT REQUIRED TO PROVIDE FOR ELECTRONIC DEBITS IN THE FORM OF AN ACH, OR BY USE OF YOUR DEBIT CARD, TO MAKE PAYMENTS ON YOUR ACCOUNT.**

**PAYMENT INFORMATION**

You understand that an Initial Payment of $_____ will be charged to your Card at the time the Agreement is signed. We will begin charging your ongoing payments of $_____ from either (i) your credit card or, (ii) at your option, by ACH or debit card if you signed this Authorization ACH Form. Your payment will commence on thepay date immediately following the date this Agreement becomes effective, or another date otherwise agreed to and every _____ lease period thereafter until the Agreement has been completed or otherwise terminated. Prior to your first payment, we will inform you of that date. If your due date falls on a Saturday, Sunday or Holiday, your account will be charged on the last business day preceding your scheduled due date. We will also charge your account for a Late Fee due under your Agreement for each missed payment and a Return Item Fee for each periodic payment that is returned unless the returned payment was the result of an error by our processor.

**AUTHORIZATION:** By your signature below, you authorize the electronic debit(s) in the form of an ACH to your account(s) as outlined in the above form. You understand and agree that the electronic debit will continue until the total amount due plus any return fees or other agreed to charges in the Agreement are collected or until you revoke this authorization. This authorization is also applicable to any new account information, payment amounts, or payment dates that you may provide in the future for payments under this Agreement. In the event an electronic debit is returned unpaid, you authorize us to charge your Card for such payment. You also authorize us to process any debits or Card charges you subsequently confirm by phone, text message or email. You may terminate this authorization to initiate debits or to charge your Card by calling or texting (833) 550-0505 or write to Chowder, Inc. at the above address or email address (customer@chowderfinancial.com). We will honor the termination provided you make this request at least 3 business days in advance for us to act on it.

**CHANGE OF INFORMATION:** You agree to notify us verbally by calling or texting (833) 550-0505, or in writing to the above address or email address (customer@chowderfinancial.com), no later than fifteen (15) days prior to any change to the account and/or closing of the account shown above or any change or situation that may affect debiting your account for the payments due under the Agreement. You further agree to pay and authorize a $15.00 debit if you change bank account or payment information.

**RETURNS:** You authorize any Return Item Fees due under your Agreement to be debited from your account if a debit is returned unless the returned item was the result of an error by the processor.

**CANCELLATION:** Upon completion of your obligations under the Agreement or your termination of this authorization to initiate debits or to charge your Card, we shall cancel this Electronic Debit Authorization.

*Johnny Ellerby*
_____                                    _____
Signature of Account Holder                                                Date

**EXHIBIT A**

## WARRANTY

[TBD]

## EXHIBIT B
## NOTICE OF CANCELLATION
### (Lessee's Copy)

**Agreement:**

**Date:**

You may **CANCEL** this Agreement, without any Penalty or Obligation, within **THREE (3) BUSINESS DAYS** from the above date.

If you cancel, any Property traded in, any payments made by you under the Agreement, and any negotiable instrument executed by you will be returned within **TEN (10) BUSINESS DAYS** following receipt by the Lessor of your cancellation notice, and any security interest rising out of the Agreement will be canceled.

If you cancel, you must make available to the Lessor at your residence, in substantially as good condition as when received, any Property delivered to you under this Agreement, or you may, if you wish, comply with the instructions of theLessor regarding the return shipment of the Property at the Lessor's expense and risk.

If you do make the Property available to the Lessor and the Lessor does not pick the Property up within **TWENTY (20) DAYS** of the date of your Notice of Cancellation, you may retain or dispose of the Property without any further obligation. If you fail to make the rental Property available to the Lessor or if you agree to return the Property to the Lessor and fail to do so, then you remain liable for performance of all obligations under the Agreement.

To cancel this Agreement mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to Chowder, Inc at the above address, or deliver VIA electronic mail to info@chowderfinancial.com **NOT LATER THAN MIDNIGHT OF** _____.

**I HEREBY CANCEL THIS AGREEMENT:**

**DATE:**

**LESSEE'S SIGNATURE:** _____

## EXHIBIT C
## NOTICE OF CANCELLATION

(Lessor's Copy/Lessee)

**Agreement:**

**Date:**

You may **CANCEL** this Agreement, without any Penalty or Obligation, within **THREE (3) BUSINESS DAYS** from the above date.

If you cancel, any Property traded in, any payments made by you under the Agreement, and any negotiable instrument executed by you will be returned within **TEN (10) BUSINESS DAYS** following receipt by the Lessor of your cancellation notice, and any security interest rising out of the Agreement will be canceled.

If you cancel, you must make available to the Lessor at your residence, in substantially as good condition as when received, any Property delivered to you under this Agreement, or you may, if you wish, comply with the instructions of theLessor regarding the return shipment of the Property at the Lessor's expense and risk.

If you do make the Property available to the Lessor and the Lessor does not pick the Property up within **TWENTY (20) DAYS** of the date of your Notice of Cancellation, you may retain or dispose of the Property without any further obligation. If you fail to make the rental Property available to the Lessor or if you agree to return the Property to the Lessor and fail to do so, then you remain liable for performance of all obligations under the Agreement.

To cancel this Agreement mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to Chowder, Inc at the above address, or deliver VIA electronic mail to info@chowderfinancial.com **NOT LATER THAN MIDNIGHT OF** _____.

**I HEREBY CANCEL THIS AGREEMENT:**

**DATE:**

**LESSEE'S SIGNATURE:** _____

# EXHIBIT D
## NOTICE OF CANCELLATION
(Co-Lessee's Copy)

**Agreement:**

**Date:**

You may **CANCEL** this Agreement, without any Penalty or Obligation, within **THREE (3) BUSINESS DAYS** from the above date.

If you cancel, any Property traded in, any payments made by you under the Agreement, and any negotiable instrument executed by you will be returned within **TEN (10) BUSINESS DAYS** following receipt by the Lessor of your cancellation notice, and any security interest rising out of the Agreement will be canceled.

If you cancel, you must make available to the Lessor at your residence, in substantially as good condition as when received, any Property delivered to you under this Agreement, or you may, if you wish, comply with the instructions of theLessor regarding the return shipment of the Property at the Lessor's expense and risk.

If you do make the Property available to the Lessor and the Lessor does not pick the Property up within **TWENTY (20) DAYS** of the date of your Notice of Cancellation, you may retain or dispose of the Property without any further obligation. If you fail to make the rental Property available to the Lessor or if you agree to return the Property to the Lessor and fail to do so, then you remain liable for performance of all obligations under the Agreement.

To cancel this Agreement mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to Chowder, Inc at the above address, or deliver VIA electronic mail to info@chowderfinancial.com **NOT LATER THAN MIDNIGHT OF** _____.

**I HEREBY CANCEL THIS AGREEMENT:**

**DATE:**

**CO-LESSEE'S SIGNATURE:** _____

# EXHIBIT E
## NOTICE OF CANCELLATION

(Lessor's Copy/Co-Lessee)

**Agreement:**

**Date:**

You may **CANCEL** this Agreement, without any Penalty or Obligation, within **THREE (3) BUSINESS DAYS** from the above date.

If you cancel, any Property traded in, any payments made by you under the Agreement, and any negotiable instrument executed by you will be returned within **TEN (10) BUSINESS DAYS** following receipt by the Lessor of your cancellation notice, and any security interest rising out of the Agreement will be canceled.

If you cancel, you must make available to the Lessor at your residence, in substantially as good condition as when received, any Property delivered to you under this Agreement, or you may, if you wish, comply with the instructions of theLessor regarding the return shipment of the Property at the Lessor's expense and risk.

If you do make the Property available to the Lessor and the Lessor does not pick the Property up within **TWENTY (20) DAYS** of the date of your Notice of Cancellation, you may retain or dispose of the Property without any further obligation. If you fail to make the rental Property available to the Lessor or if you agree to return the Property to the Lessor and fail to do so, then you remain liable for performance of all obligations under the Agreement.

To cancel this Agreement mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to Chowder, Inc at the above address, or deliver VIA electronic mail to info@chowderfinancial.com **NOT LATER THAN MIDNIGHT OF**_____.


**I HEREBY CANCEL THIS AGREEMENT:**


**DATE:**


**CO-LESSEE'S SIGNATURE:** _____

Promo (EPO) Version

## EXHIBIT F

## EXPLANATION OF EARLY PURCHASE OPTIONS.

**Your Early Purchase Option.**

Your contract has an Early Purchase Option ("EPO") which means that within a specified period of time, if you prepay your lease, your payment will be significantly less than it would be after the specified period.

**How do I qualify?**

You simply have to contact Chowder either by calling/texting 833-550-0505, emailing customer@chowderfinancial.com, or sending a letter to Chowder's address on the contract (8920 Eves Rd. #769479. Roswell, GA. 30076). After receiving your request, we will inform you of the amount that will need to be paid to exercise your EPO right.

**Is there an expiration date?**

Yes, your contract requires the EPO to occur on or before the _____ day for the lowest price.

After the _____ day, you may still prepay your contract but the payment will be based on _____% of your remaining lease payments which will be more than the amount that will be due on prepayment on or before the _____ day.

**What is the benefit to you?**

The benefit to you on or before the _____ day is that your payment will be less than prepayment on the _____ day or any later date.

**What is not included in the Early Purchase Option?**

The EPO price does not include other charges such as late fees that will still need to be paid.

**What happens after payment of the EPO price and any other charges?**

After payment of the EPO price and other charges such as late fees, you will become the owner of the leased Property.

## EXHIBIT F

The following are examples of the payment required if you exercise the Early Purchase Option ("EPO") on the last day of the initial EPO period ( _____ day) and on the day after expiration of the initial EPO period ( _____ day).

**Early Purchase Option ("EPO") – Prepayment on _____ day.** EPO Payment is based on Cash Price minus scheduled payments plus a fee of _____% of the Cash Price.

- Cash Price                                             $_____.
- Scheduled Payments                          $_____ ($_____ x _____).
- Balance due after Scheduled Payments          $_____.
- Fee ( _____%) [1]                              + $_____.
- Payment Required to Exercise EPO on _____ day      $_____.
- Scheduled Payments Previously Made      + $_____.
- Total Payments you will have made on      $_____.
  exercise of EPO right on the 365th day

_____

[1] Since the _____% fee is based on the original Cash Price ($_____) without regard to any scheduled payments, the fee of $_____ based on the "Balance due after Scheduled Payments" ($_____) is actually _____%.

Promo (EPO) Version                                                                14

**Early Purchase Option – Prepayment on _____ day.** EPO Payment is based on _____% of the remaining lease payments.

- Cash Price                                                          $_____.
- Remaining Lease Payments                           $_____ ($_____ x \_\_\_\_ ).
- Payment Required to Exercise EPO on _____ day    $_____ ( _____ x $_____ ).
- Scheduled Payments Previously Made             + $_____.
- Total Payments you will have made on               $_____.
  exercise of EPO right on the 365th day

**C chowder**

## Risk Based Pricing Notice.

| | |
|---|---|
| What is a Consumer Report? | A Consumer Report is a record of your past financial performance. It includes information about whether you pay your bill on time and how much you owe to creditors. |
| How did we use your Consumer Reports? | We used information from your Consumer Reports to set the terms of the lease we are offering you, such as leasing fees and periodic payment amounts.<br><br>The Terms offered to you for your lease may be more or less favorable than the terms offered to consumers who have better or worse past financial performances. |
| How can you obtain a copy of your Consumer Reports? | Under federal law, you have the right to obtain a copy of your Consumer Reports without charge for 60 days after you receive this notice. To obtain your free Reports, contact:<br><br>Experian toll free number: 1-888-397-3742<br><br>Mailing Address:<br><br>    Experian<br>    P.O. Box 9701<br>    Allen, TX 75013 |
| How can you get more information about your Consumer Reports? | For more information about Consumer Reports, and your rights under federal law, visit the Federal Reserve Board's website at www.federalreserve.gov, or the Federal Trade Commission's website at www.ftc.gov. |

Chowder, Inc.

8920 Eves Rd. #769479.

Roswell, GA. 30076.

customer@chowderfinancial.com

833-550-0505

Promo (EPO) Version                                                                                                    16